UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

MAIROBY HERNANDEZ, Individually, and
On Behalf of All Others Similarly Situated,

                               Plaintiff,

       vs.

LUZERN LABORATORIES INC.,

                     Defendant.

---------------------------------------------------------------- x

Civil Action No.:

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE AMERICANS WITH
DISABILITIES ACT OF 1990 AND NEW
YORK CITY HUMAN RIGHTS LAW

DEMAND FOR JURY TRIAL

Plaintiff Mairoby Hernandez ("Plaintiff") brings this class action on an individual basis, and on behalf of all others similarly situated, for declaratory relief, injunctive relief, and compensatory damages—including statutory and punitive damages—against defendant Luzern Laboratories Inc. ("Defendant"), and alleges based upon information and belief, personal knowledge of Plaintiff, and the investigation of counsel, as follows:

### NATURE OF THE ACTION

1.      Plaintiff is a visually impaired and legally blind person[1] who brings this civil rights class action against Defendant for its failure to design, construct, maintain, and operate its website, Luzernlabs.com ("Website"), to be fully accessible to—and independently usable by—Plaintiff and the Class who use screen-reading software.  Plaintiff asserts this action individually and on behalf of all other visually impaired and/or legally blind individuals in the United States who have attempted to access the Website and have been denied equal access to the enjoyment of beauty products offered thereon during the past three years from the date of the filing of the complaint (the "Class" and "Class Period").

2.      Defendant denies Plaintiff and the Class full and equal access to both the goods and features offered on the Website, which are accessible to non-disabled individuals. The Website's features include, but are not limited to, the following: privacy policy, return policy, terms of service, refund policy, contact information.

3.      Congress enacted the Americans with Disabilities Act of 1990 (the "ADA") to prohibit discrimination against individuals with disabilities.  Its drafters intended that the statute

---

[1]      Plaintiff uses the terms "blind" or "visually impaired" to refer to all people with visual impairments who meet the legal definition of blindness; namely, a visual acuity with correction of less than or equal to 20 x 200.  Some individuals who meet the definition of the term "legally blind" have limited vision, while others have no vision at all.

keep pace with the times and rapidly changing technology.  The Internet has become an

increasingly prominent part of everyday life, specifically providing blind and/or visually impaired

individuals with the ability, via screen-readers, to access a variety of products and services fully

and independently.  The ADA applies to websites and is a powerful tool to stem the harmful and

discriminatory effects of access barriers. Unfortunately, the Website that Plaintiff attempted to

access currently has access barriers.

4.      To clarify the ADA's application to websites, in March 2022, the United States

Department of Justice issued guidance on accessibility.  It stated, in relevant part, that:

> Inaccessible web content means that people with disabilities are denied equal access
> to information. An inaccessible website can exclude people just as much as steps at
> an entrance to a physical location. A website with inaccessible features can limit
> the ability of people with disabilities to access public accommodation's goods,
> services, and privileges available through that website.[2]

5.      Snubbing these guidelines, Defendant owns and/or operates the Website, which

contains myriad access barriers that make it difficult, if not impossible, for Plaintiff and the Class

users to even complete a transaction on the website.  Preventing the ability of disabled persons to

utilize the internet—a common marketplace and important tool for daily life—increases their

feelings of isolation, stigma and discrimination of the type that Title III of the ADA sought to

redress.  Additionally, this sort of discrimination was, and remains, particularly acute due to the

recent COVID-19 pandemic.

6.      Plaintiff has visited the Website numerous times, most recently on July 27, 2023.

On each occasion, Plaintiff had the intent of purchasing the ALPINE ROSE NECTAR MASQUE.

Unfortunately, Plaintiff and the Class are blocked from experiencing all of the Website's features,

---

[2]      U.S. Dep't of Justice, Guidance on Web Accessibility and the ADA (Mar. 18, 2022),
https://www.ada.gov/resources/web-guidance.

including the ability to complete a transaction thereon.  Unless Defendant remediates their

Website, Plaintiff and the Class will be unable to independently navigate, browse, and ultimately

complete transactions thereon.

7.      As a result of the continuing accessibility issues, Defendant, through its ownership

and/or operation of the Website, violates Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, and the

New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code §§ 8-101 *et seq.*

8.      Plaintiff and the Class bring this action against Defendant seeking, *inter alia*, a

preliminary and permanent injunction, other declaratory relief, statutory damages, actual and

punitive damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and

expenses.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

10.      This Court has supplemental jurisdiction over the NYCHRL claim pursuant to 28

U.S.C. § 1367.

11.      This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and

2202.

12.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and

(c) because: (i) Defendant's unlawful course of conduct occurred and continues to occur in this

District; (ii) Defendant is subject to personal jurisdiction in this District; and (iii) Plaintiff

attempted to use the Website in this District.

13.      Defendant is subject to personal jurisdiction in this District.  Defendant owns

and/or operates the Website, which distributes its products throughout the United States,

including to New York customers residing in this judicial district.  It was within this judicial

district that Plaintiff was being, and continues to be, denied the full use and enjoyment of the

3

beauty products offered on the Website.  As such, it is here that Defendant is committing a

substantial part of the acts or omissions that caused injury to Plaintiff and the Class in violation

of the ADA and the NYCHRL.

## PARTIES

**Plaintiff**

14.     Plaintiff is a resident of New York, New York.  Plaintiff is a blind, visually

impaired, handicapped person and a member of a protected class of individuals pursuant to the

ADA and NYCHRL.

**Defendant**

15.     Defendant is a company registered in Connecticut.  Defendant conducts business

in New York through the Website, which is a place of public accommodation as defined under

42 U.S.C. § 12181(7).

## SUBSTANTIVE ALLEGATIONS

**The visually impaired are accessing the internet increasingly every year**

16.     In 2017, the Centers for Disease Control ("CDC") estimated that the blind

population in the United States reached approximately 1.7 million.  The American Foundation

for the Blind's website states that the 2019 American Community Survey (conducted by the U.S.

Census Bureau) identified an estimated 388,524 New Yorkers with vision difficulty.

17.     For sighted and disabled persons alike, the internet has become a crucial resource.

Stating the obvious, the internet houses websites that contain information on practically any topic

imaginable.  It is an invaluable tool for shopping, conducting business, entertainment, research,

learning, and countless other activities.

18.     Prior to the COVID-19 pandemic ("Pandemic"), MIT published a study projecting

that the average American uses the internet for 23.6 hours a week.  Due to the Pandemic,

4

companies across the nation were forced to shut down their physical locations and transact business remotely.  According to PEW research, as of 2021, 3 out of 10 U.S. residents spent the majority of their day using the internet.  According to UBS, e-commerce will account for 25% of all sales and up to 50,000 physical retail stores will shut down by the year 2026.

**The visually impaired use screen-readers to access the internet**

19.     Under this backdrop, it is clear that blind and/or visually impaired individuals (like Plaintiff) must not encounter website barriers so that they too can enjoy the same access, convenience, safety, and time and money savings that websites provide to sighted individuals.

20.     Plaintiff and the Class access websites by using specially designed screen-reading software that requires the use of a keyboard to navigate and vocalize visual information on a computer screen.  Screen-reading software offers the only method for blind and/or visually impaired individuals to be able to independently access the internet.

21.     Plaintiff in particular uses screen-reading software called NonVisual Desktop Access ("NVDA"), which is currently one of the most popular screen-readers available for PCs.

**A company's website must accommodate the use of screen-readers**

22.     Unless websites are designed to be read by screen-reading software, blind and/or visually impaired users are unable to fully access the internet and the information, products, goods and services contained thereon.

23.     The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the Web Content Accessibility Guidelines ("WCAG").  WCAG 2.1 is a set of well-established guidelines promulgated to ensure that websites are accessible to the blind and/or visually impaired.   These  guidelines  are  universally  followed  by  most  large  business  entities  and

government agencies to ensure their websites are accessible.  Many courts, as well as the DOJ, have further established WCAG 2.1 as the standard for accessibility.

24.     The federal government promulgated website accessibility standards under § 508 of the Rehabilitation Act.   These guidelines can be found online and are recommended to companies that employ website design vendors.  Additionally, website design vendors constantly remind companies to maintain compliance with these guidelines.

25.     Unfortunately, non-compliant websites, such as Luzernlabs.com, contain numerous common access barriers that prevent screen-reading programs, such as NVDA, from relaying information to blind and/or visually impaired consumers.  These consumers regularly encounter the following access barriers:

a.     images lack Alt-text (as defined below);

b.     title frames with text are not provided, limiting website navigation;

c.     when pressing the tab key to navigate, information is not read by the screen-reader – in technical terms, equivalent text is not provided when using scripts;

d.     drop down menus are not read properly, limiting website navigation;

e.     forms are not read properly by the screen-reader, limiting: (i) website navigation; (ii) the ability to receive discounts; (iii) the ability to create an account; and (iv) the ability to transact business;

f.     promotional materials embedded in images are not read by the screen-reader; and

g.     languages aside from English are not read properly by the screen-reader.

**The Website contains access barriers and is discriminatory**

26.     It is Defendant's policy and practice to deny Plaintiff and the Class access to the Website, which includes its privacy policy, return policy, terms of service, refund policy, contact

6

information.  Importantly, Plaintiff could not purchase the beauty products offered on the Website

to the general public.  Due to Defendant's failure and refusal to remove access barriers on the

Website, Plaintiff and the Class have been—and currently are being—denied equal access to the

Website and the beauty products offered thereon.

27.     The Website is a commercial website that offers products for online sale so that,

*inter alia*, New York consumers can transact business on it.  Among other things, the Website:

a.      allows users to browse the wide range of products sold by Defendant;

b.      provides  detailed  descriptions  about  the  products  offered,  including

product and pricing details, customer reviews, and payment options;

c.      provides information about the company's history, privacy policy, terms

of use and other background information, and its shipping and return policies;

d.      provides links to the company's social media presence on apps such as

Facebook, Twitter, Instagram, and others; and

e.      provides contact information.

28.     When attempting to purchase the ALPINE ROSE NECTAR MASQUE, Plaintiff

encountered the following access barriers (collectively, the "Access Barriers"):

a.      The Website's images and other non-text elements lack alternative-text

("Alt-text").  Alt-text is invisible text code embedded in images and non-text elements.  Alt-text

must be coded properly so that each picture and non-text element can be audibly described by a

screen-reader.  Alt-text does not change the visual presentation of an image – it merely appears

as a text pop-up when the mouse scrolls over it.  There are images and non-text elements on the

Website that lack Alt-text.  As a result, Plaintiff and the Class are unable to see pictures, logos,

or icons including image products and rating details with icons.  This significantly inhibits,

7

deters, and delays Plaintiff and the Class's ability to purchase products, such as the ALPINE ROSE NECTAR MASQUE on the Website.

b.      The Website includes empty links without text.  For the screen-reader to adequately describe the purpose of a link, there must be proper text and label descriptions.  The Website contains empty links that do not have adequate text descriptions, impeding Plaintiff's and the Class's ability to independently navigate the Website, make informed decisions, and successfully complete a purchase.

c.      The Website lacks prompting information and accommodations necessary to allow Plaintiff and the Class to locate and accurately fill-out online forms.  On the Website, these forms include search fields to locate products, search fields to select quantity, and fields used to fill-out personal information, including address and credit card information.  Due to the lack of adequate labeling, Plaintiff and blind and/or visually impaired customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information properly and with confidence and security.

d.      The Website's embedded link for the shopping cart does not specify its purpose, resulting in the screen-reader's inability to direct Plaintiff to the shopping cart, announce when items have been added, or verbalize the cart details.  Sighted individuals can see a window appear and can adjust the quantity, remove the item, or proceed to checkout.  Without verbal notification, Plaintiff is not aware of whether the add to cart button was adequately selected or if an item was added to the cart.  As such, Plaintiff and the Class cannot adjust items within the cart like sighted individuals.  As a result, Plaintiff and the class are deterred and denied from completing a purchase independently.

e.      The Website's embedded and drop-down links are not compatible with the screen-reader, resulting in Plaintiff and the Class's inability to simply navigate the webpage through drop down menus.  This makes navigating the Website even more time consuming and confusing for Plaintiff and the Class thus delaying and deterring them from the webpage.

f.      The Website does not have a mechanism to bypass blocks of content that are repeated on multiple webpages.  As a result, every time Plaintiff navigates to another webpage or the webpage reloads, Plaintiff and the Class must tab through every navigation bar option and footer on the Website in an attempt to reach the desired service.  Thus, Defendant's improper design and coding delays and deters Plaintiff and the Class from independently and successfully purchasing items as a sighted individual could.

29.     Since the Website had these Access Barriers, Plaintiff was unable to purchase the ALPINE ROSE NECTAR MASQUE and/or other products.

30.     Plaintiff has made numerous attempts to browse and complete a purchase on the Website, most recently on July 27, 2023, but was – and remains – unable to do so independently because of the Access Barriers.  Plaintiff still wants to purchase the ALPINE ROSE NECTAR MASQUE.  Plaintiff intends to return to the Website to complete the purchase of the ALPINE ROSE NECTAR MASQUE as soon as the Access Barriers are cured.

31.     Since the Website can be accessed around the clock from any internet-connected device, once the Access Barriers are removed, Plaintiff will easily return to the Website and access privacy policy, return policy, terms of service, refund policy, contact information.

32.     Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortal locations it can be attributed to proximity, travel time, *etc.*).

33.     As previously mentioned, Plaintiff has made numerous attempts, without success, to enjoy the Website's features, including, but not limited to, privacy policy, return policy, terms of service, refund policy, contact information on the Website without success.  Plaintiff anxiously awaits the removal of the Access Barriers, so that she can equally access the available products.

**Defendant must remove its Website's Access Barriers**

34.     The Access Barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access on numerous occasions, most recently on July 27, 2023.  This denial deterred and prevented Plaintiff in the past, and continues to deter and prevent Plaintiff presently, from independently completing an informed purchase on the Website.  If the Website were equally accessible to all, as required under the ADA, Plaintiff and the Class would have been able to independently navigate the website and complete a desired transaction as sighted individuals do.

35.     Plaintiff has actual knowledge of the Access Barriers that make the Website inaccessible and not independently usable by blind and/or visually impaired people.  The presence of the Access Barriers on the Website demonstrates that Defendant is engaging in acts of intentional discrimination, especially since simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and the Class equal access.  Currently, Plaintiff alleges, without limitation, that Defendant is engaging in the following acts of intentional discrimination:

a.     constructing and maintaining a website that is inaccessible to visually impaired individuals, including Plaintiff and the Class;

b.     failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff and the Class; and

c.      failing to take actions to correct the Access Barriers in the face of substantial harm and discrimination to blind and/or visually impaired consumers (a protected class), including Plaintiff and the Class.

36.     Defendant uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.  To remove the Website's Access Barriers, Defendant must retain a qualified consultant acceptable to Plaintiff to assist Defendant in complying with WCAG 2.1 guidelines.  This is necessary as Defendant lacks a corporate policy or a current qualified individual to aid in this realm, as shown through the current inaccessibility of its Website.  Defendant must cooperate with the agreed upon consultant to:

a.      train its employees and agents who develop the website on accessibility compliance under the WCAG 2.1 guidelines;

b.      regularly check the accessibility of the website under the WCAG 2.1 guidelines;

c.      regularly test user accessibility by blind and/or visually impaired persons to ensure that Defendant's website complies under the WCAG 2.1 guidelines; and

d.      develop an accessibility policy (clearly posted on its website(s)) with contact information for users to report accessibility-related problems.

37.     Although Defendant may currently claim to have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, Plaintiff and the Class.

38.     If Luzernlabs.com were accessible, Plaintiff and the Class would be able to independently purchase beauty products that Defendant sells thereon.  Defendant has, upon

information and belief, invested substantial sums in developing and maintaining its Website and

has generated significant revenue thereon.  The revenues procured by Defendant far exceed the

associated cost of making the website equally accessible to visually impaired consumers.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a nationwide class action pursuant to Rules 23(a) and

(b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), both individually and on behalf

of the Class.  Plaintiff also seeks certification of a sub-class of all visually impaired and/or legally

blind individuals in the City of New York who have attempted to access Defendant's website and

have been denied access to the equal enjoyment of the goods offered on the website during the

Class Period (the "NYC Sub-Class").[3]

40.     Excluded from the Class are Defendant, any entity in which Defendant has a

controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors,

subsidiaries, and/or assigns of any such individual or entity.

41.      Upon information and belief, there are hundreds of members in the Class who have

suffered from Defendant's conduct complained of herein during the Class Period.  Accordingly,

joinder is impracticable pursuant to Fed. R. Civ. P. Rule 23(a)(1).

42.     Common issues of fact or law predominate over individual issues within the

meaning of Fed. R. Civ. P. Rule 23(a)(2).  Common issues of law and fact include, but are not

limited to, whether:

        a.     the Website is a place of "public accommodation" under the ADA;

---

[3]      The Class and NYC Sub-Class are hereinafter identified, collectively, as "the Class," unless
otherwise stated.

b.      the Website is a "place or provider of public accommodation" under the

NYCHRL; and

c.      the Website denies the full and equal enjoyment of its products, services,

facilities, privileges, advantages, or accommodations to people with visual disabilities, violating

the ADA and/or NYCHRL.

43.      Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class

and the claims arising out of Defendant's common uniform course of conduct are all based upon

the same facts and legal theories.

44.      Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has

retained competent counsel experienced with class actions and civil rights litigation who intend

to vigorously prosecute this action.  Plaintiff has similar legal bases for statutory and punitive

damages that are sought on behalf of members of the Class in this action.  Class certification of

the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused

to act on grounds generally applicable to the Class, making appropriate both declaratory and

injunctive relief with respect to Plaintiff and the Class as a whole.

45.      Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3).  A

class action is superior to other available methods for the fair and efficient adjudication of this

controversy since a multiplicity of actions could result in an unwarranted burden on the court

system and could create the possibility of inconsistent judgments.  Moreover, a class action will

allow redress for many persons whose claims would otherwise be too small to litigate

individually.  There will be no difficulty in the management of this action as a class action.

46.     Class members' identities can be identified by Defendant's records.  Plaintiff

reserves the right to amend the definition of the Class at any point of the litigation, especially

after being provided the opportunity to review the documents and records produced in discovery.

**COUNT I**

**Against Defendant for Violations of the ADA, 42 U.S.C. §§ 12101 *et seq.*, on behalf of
Plaintiff and the Class**

47.      Plaintiff incorporates by reference the preceding allegations as though fully set

forth herein.

48.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal
> enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of
> any place of public accommodation by any person who owns, leases (or leases to), or
> operates a place of public accommodation.

42 U.S.C. § 12182(a).

49.     The Website is a sales establishment and a place of public accommodation within

the definition of 42 U.S.C. § 12181(7).  The website is a service that is offered to the general

public, and as such, must be equally accessible to all potential consumers.

50.     Defendant is subject to Title III of the ADA because it owns and/or operates the

Website.

51.     Under 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny

individuals with disabilities the opportunity to participate in – or benefit from – the products,

services, facilities, privileges, advantages, or accommodations of an entity.

52.     Under 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny

individuals with disabilities an opportunity to participate in or benefit from the products, services,

facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded

to other individuals.

14

53.     Under 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii), unlawful discrimination also includes, among other things:

> "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded . . . ."

54.     Plaintiff is a member of a protected class of persons who has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

55.     Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided goods that are provided to other patrons who are not disabled, and has been provided goods that are inferior to the services provided to non-disabled persons.

56.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

## COUNT II

**Against Defendant for Violations of the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et seq.*, on behalf of Plaintiff and the NYC Sub-Class**

57.     Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

58.     N.Y.C. Administrative Code § 8-107(4)(a) provides that:

> "It shall be an unlawful discriminatory practice for any person, being the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, the full and equal enjoyment on equal terms and conditions, of any of the accommodations, advantages, facilities or privileges of the place or provide of public accommodation."

59.     The Website is a "sales establishment" and "public accommodation" within the definition of N.Y.C. Admin. Code § 8-102(9).  Defendant owns and/or operates its Website, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

60.     By maintaining a website with accessibility barriers, Defendant violates N.Y.C. Administrative Code § 8-107(4)(a).  This inaccessibility denies blind and/or visually impaired patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

61.     Under N.Y.C. Admin. Code § 8-107(15)(a), Defendant is required to:

> "make reasonable accommodation to the needs of persons with disabilities . . . it is an unlawful discriminatory practice for any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

62.     Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has constructed and maintained a website with accessibility barriers and failed to take action to fix the access barriers.  These violations are ongoing.

63.     As such, under § 8-107(4)(a) and/or its implementing regulations, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and the NYC Sub-Class.  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the NYC Sub-Class will continue to suffer irreparable harm.  Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

## COUNT III

### Against Defendant for Declaratory Relief, on behalf of Plaintiff and the Class

64.     Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

65.     The Website contains Access Barriers denying blind and/or visually impaired customers full and equal access to Defendant's products.  The Website violates 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, which prohibit discrimination against the blind and/or visually impaired.

66.     A judicial declaration is, therefore, necessary, and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

a.     awarding Plaintiff statutory money damages, actual damages, and punitive damages, including pre-judgment and post-judgment interest;

b.     granting a preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully comply with the requirements set forth in the ADA and NYCHRL;

c.     providing a declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and/or visually impaired;

d.     certifying the Class and the NYC Sub-Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as class representative, and Plaintiff's attorneys as class counsel;

e.     awarding attorneys' fees and costs, and other relief; and

f.     awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 3, 2023                    **MIZRAHI KROUB LLP**

_____
                         IAN N. PIASECKI

IAN N. PIASECKI
225 Broadway, 39th Floor
New York, NY 10007
Telephone:  212/595-6200
212/595-9700 (fax)
ipiasecki@mizrahikroub.com

*Attorneys for Plaintiff*